Argued and submitted January 26, award of attorney fees under ORS 20.105(1) reversed; award of enhanced prevailing party fee under ORS 20.190(3) vacated and remanded; otherwise affirmed September 8, 2011

Lara WILLIAMS,
*Plaintiff,*

*v.*

SALEM WOMEN'S CLINIC,
an Oregon corporation,
*Defendant.*

SALEM WOMEN'S CLINIC, INC.,
*Third-Party Plaintiff-Appellant,*

*v.*

David R. BARLOW,
*Third-Party Defendant-Respondent.*

Marion County Circuit Court
07C20184; A141570

263 P3d 1072

Jossi Davidson argued the cause for appellant. With him on the briefs was Gracey & Davidson.

William E. Gaar argued the cause for respondent. With him on the brief were Michelle E. Lentzner and Buckley LeChevallier PC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.*

HADLOCK, J.

---

* Hadlock, J., *vice* Riggs, S. J.

## HADLOCK, J.

Defendant/third-party-plaintiff Salem Women's Clinic (SWC) appeals a judgment requiring it to pay attorney fees and an enhanced prevailing party fee to third-party-defendant David Barlow, its former practice manager. SWC assigns error both to the fee awards and to the trial court's denial of SWC's motion for sanctions against Barlow for an alleged discovery violation. We affirm the trial court's denial of the latter motion without discussion and write only to address SWC's challenge to the fee awards. We reverse the attorney fee award and vacate and remand the supplemental judgment so the trial court may reconsider the prevailing party fee award in light of this opinion.

As we explain below, because ORS 20.105(1) is the sole basis for the award of attorney fees, we must determine whether the record was "entirely devoid" of support for SWC's third-party breach of contract claim against Barlow.[1] *Olson v. Howard*, 237 Or App 256, 269, 239 P3d 510 (2010) (quoting *Mattiza v. Foster*, 311 Or 1, 8, 803 P2d 723 (1990)). We describe the pleadings, litigation, and evidence in light of that standard, without considering the trial court's resolution of disputed historical facts. *Cf. Olson*, 237 Or App at 268-69 (rejecting trial court's "no reasonable basis" determination, in part because the court had made that determination after it "weighed the parties' competing evidence").

The underlying litigation began when plaintiff Lara Williams sued SWC, her former employer, claiming that SWC had breached its contract to provide her with lifetime "tail" insurance coverage when her employment ended.[2] Plaintiff alleged in her complaint that (1) SWC's practice was

---

[1] In addition to its third-party breach of contract claim, SWC also alleged third-party claims of "Breach of Fiduciary Duty" and "Action for Accounting" against Barlow, but it abandoned the latter two claims before trial. Barlow's motion for attorney fees focused on the breach of contract claim and Barlow did not separately argue that he would be entitled to fees for fighting the other two claims even if he were not entitled to fees for defending against the breach of contract claim. Accordingly, we do not address whether the record includes any support for the abandoned claims.

[2] As described in the pleadings, "tail" insurance coverage "is a form of professional malpractice insurance, which covers claims brought against the insured after regular coverage has expired but which occurred during the time the regular coverage existed."

to offer "an unlimited tail policy" to physicians and midwives who worked for SWC for at least two years; (2) plaintiff, a physician, entered into contracts with SWC which provided that SWC would purchase tail coverage for plaintiff if she worked for at least two years; (3) plaintiff "expected to receive an unlimited tail policy"; and (4) Barlow had told plaintiff—before she executed her first contract with SWC—that the contract term related to tail coverage "was in fact an unlimited tail policy." Plaintiff averred in a supporting declaration that Barlow had told her—again, during initial contract negotiations—that SWC would "purchase a lifetime tail policy" for her as long as she worked for the clinic for at least two years.[3] Plaintiff also submitted a declaration from Barlow asserting that SWC's standard practice was to offer lifetime tail insurance and that he had understood the pertinent term in plaintiff's contract to refer to a lifetime policy.

SWC answered and filed a third-party complaint against Barlow, claiming that if Barlow had made the representations that plaintiff alleged, then he had breached his contract with SWC:

"If [Barlow] made the representations alleged by Plaintiff, then [Barlow] breached his employment agreement with SWC, and his implied duty of good faith and fair dealing. * * * [I]f Plaintiff is entitled to relief, [SWC] will be damaged in the amount of money required to be paid by [SWC]. [Barlow] should indemnify SWC for, and hold SWC harmless from, all sums expended by SWC as a result of the present litigation."

During discovery, plaintiff again asserted that Barlow had agreed that her contract with SWC provided for "unlimited" tail coverage. In her deposition, she described the contract negotiations as follows:

"Q. Now, you mentioned discussions you had with Dave Barlow. Can you describe for me all of the discussions you had with him prior to signing your first employment contract?

---

[3] The parties often used the terms "lifetime" and "unlimited" interchangeably to describe a tail policy that does not provide coverage for only a limited period of time.

"A.   The discussions that I remember clearly were of the tail discussion. I asked him that—*I said, you know, because this was my first contract with my first job I wanted to clarify that, you know, tail was an unlimited policy.* I said, This will cover anything that happens while I'm at the clinic.

"And he said, Yes.

"And I said, Okay."

(Emphasis added).[4]

All three parties moved for summary judgment. In a declaration supporting his motion, Barlow asserted that he and plaintiff had not discussed the duration of her tail insurance coverage during their contract negotiations. He also denied that he had told plaintiff that the tail insurance coverage referenced in her employment agreement would be lifetime, unlimited, or forever in duration. In opposing Barlow's motion, SWC relied both on plaintiff's deposition testimony and on the allegations in her original complaint and declaration to establish the existence of a dispute about what Barlow had told plaintiff during contract negotiations. The trial court denied each of the summary judgment motions, later explaining that "there remained a genuine issue of material fact, as to whether or not Barlow had acted in breach of his contract with SWC."

A bench trial followed less than two weeks later. Plaintiff's case was directed primarily at establishing that the parties all had understood—based on contract language, industry standards, and SWC's prior practices—that SWC and plaintiff both had intended plaintiff's employment contract to provide her with lifetime tail coverage. During cross-examination by Barlow's attorney, plaintiff testified that Barlow had *not* told her "anything about the actual duration

---

[4] Barlow argued in the summary judgment proceedings that plaintiff had been referring only to her own internal thought process when she stated that she "wanted to clarify that, you know, tail was an unlimited policy." However, plaintiff's deposition testimony also can be read to suggest that she had made that statement *to Barlow* and he had agreed that SWC would provide her with unlimited coverage. Because we review the record to determine whether it is entirely devoid of evidence supporting SWC's third-party claim against Barlow, we must credit the latter interpretation.

of [her] tail coverage." Barlow testified similarly, stating that he had believed that plaintiff would receive unlimited tail coverage, but had not discussed the policy's duration with her. SWC's chief executive officer, Dr. Elizebeth Harmon, then testified about what she thought had contributed to plaintiff's belief that she was entitled to lifetime tail insurance. Harmon disclaimed any understanding of the legal basis for SWC's third-party claim against Barlow. Instead, she explained that, from her personal perspective, the problem was Barlow's failure to explain the policy terms to plaintiff at her exit interview, not any representation that Barlow may have made during initial contract discussions.

The circuit court ruled in plaintiff's favor, finding that she "had a right to an unlimited tail insurance policy pursuant to her contract." The court also granted Barlow's motion for involuntary dismissal of SWC's third-party breach of contract claim and entered judgment accordingly. Barlow then moved for an award of attorney fees under ORS 20.105 and an enhanced prevailing party fee under ORS 20.190. The trial court issued two letter opinions explaining in detail why it was granting Barlow's motion and entered a supplemental judgment requiring SWC to pay the attorney fees and enhanced prevailing party fee.

On appeal, SWC assigns error to the trial court's award of attorney fees, arguing that the court's factual findings lack any basis in the record and, in any event, do not support its conclusion that SWC acted unreasonably in pursuing its third-party claim against Barlow. In response, Barlow argues that the trial court did not err in awarding attorney fees, characterizing that award as "one legal option" that was available to the court. In other words, Barlow contends, the trial court did not abuse its discretion by awarding him attorney fees.

The parties' arguments implicate two legal standards: (1) the standard that trial courts apply in considering motions seeking attorney fees under ORS 20.105(1); and (2) our standard of review. Both standards are well established. First, ORS 20.105(1) requires an attorney fee award

if, and only if, the trial court finds that a party willfully disobeyed a court order or pursued a claim or defense with "no objectively reasonable basis":

> "In any civil action, suit or other proceeding in a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court shall award reasonable attorney fees to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim, defense or ground for appeal."

ORS 20.105(1). A claim lacks an objectively reasonable basis only if it is "entirely devoid of legal or factual support," *Olson*, 237 Or App at 269, either at the time it is made or, "in light of additional evidence or changes in the law," as litigation proceeds, *Dimeo v. Gesik*, 197 Or App 560, 562, 106 P3d 697 (2005).

Second, whether a claim lacks an objectively reasonable basis is a legal question, and we review the trial court's ruling on that question for legal error. *Olson*, 237 Or App at 264-65; *Morasch v. Hood*, 232 Or App 392, 403-04, 222 P3d 1125 (2009). Barlow's contention that we review for abuse of discretion is incorrect.[5]

Application of those standards in this case requires us to decide, as a matter of law, whether SWC lacked any objectively reasonable basis for bringing its third-party breach of contract claim against Barlow. Before doing so, we pause to note that the trial court strayed from the correct analysis. Instead of determining whether the record was "entirely devoid" of support for SWC's third-party claim, as ORS 20.105(1) requires, the court identified several factors

---

[5] An early version of ORS 20.105 did authorize a trial court to award attorney fees "in its discretion" in certain specified circumstances, including where a party had acted in bad faith. *See Sheehan and Sheehan*, 123 Or App 449, 451, 860 P2d 835 (1993) (quoting ORS 20.105(1) (1993)). The 1995 legislature amended ORS 20.105 to make an attorney fee award mandatory when the trial court finds that a party pursued a claim or defense without any objectively reasonable basis. Or Laws 1995, ch 618, § 2.

that it took into account in awarding fees, including whether any party had acted recklessly or in bad faith. The factors listed in the trial court's letter opinions reflect those specified in ORS 20.075, which apply when another source of law gives a court *discretion* to award attorney fees. ORS 20.075(1). But those factors do not apply to a court's decision whether to award fees when, as here, a party seeks a *mandatory* attorney fee award under ORS 20.105(1).[6] *See Benaman v. Andrews*, 213 Or App 467, 478, 162 P3d 280 (2007) (a party's personal motivation for seeking relief is not relevant to the question whether an attorney fee award is required under ORS 20.105(1)); *Secor Investments, LLC v. Anderegg*, 188 Or App 154, 174, 71 P3d 538, *rev den*, 336 Or 146 (2003) (" '[B]ad faith' is immaterial to a determination of entitlement to fees under ORS 20.105.").

When a trial court has applied an incorrect legal standard in assessing a party's claim, we sometimes remand so the trial court may apply the correct standard in the first instance. When the standard is purely legal, however, in the interest of judicial economy, we often apply the legal standard ourselves instead of remanding. *See, e.g.*, *Deatherage v. Pernsteiner*, 239 Or App 161, 172, 243 P3d 865 (2010), *rev den*, 349 Or 664 (2011). We conclude that the latter course is appropriate here because we can determine, as a matter of law, whether the record is "entirely devoid" of support for SWC's claim against Barlow. We hold that it is not.

"Whether a party has an objectively reasonable basis for asserting a claim is a function of the substantive law governing the claim." *Olson*, 237 Or App at 269 (quoting *Dimeo v. Gesik*, 195 Or App 362, 371, 98 P3d 397 (2004), *adh'd to as modified on recons*, 197 Or App 560, 106 P3d 697 (2005)). Here, however, the parties' arguments on appeal do not focus on the legal elements of SWC's claim. Instead, the parties' disagreement relates to whether that claim had a factual basis in the record, *i.e.*, whether SWC had grounds to pursue a third-party claim premised on Barlow having made certain

---

[6] The ORS 20.075 factors do become relevant when, after having decided that ORS 20.105(1) requires an attorney fee award, the trial court decides the amount of fees that one party must pay the other. ORS 20.075(2). In this case, however, the amount of fees is not at issue. The parties disagree only about whether *any* award is justified.

representations during his contract negotiations with plaintiff.

The basis for SWC's claim may be found in plaintiff's allegations. Significantly, SWC did not itself contend that Barlow had told plaintiff, at the beginning of contract negotiations, that SWC would buy her lifetime tail coverage. Rather, SWC's third-party claim derived from plaintiff's allegation (made in her complaint and supporting declaration) that Barlow had made that representation. Plaintiff's allegation provided some basis for SWC's third-party breach of contract claim against Barlow. Consequently, that claim was not "entirely devoid" of support when it was made.

Nor did SWC's third-party claim lose all support in the record as the litigation progressed. Although plaintiff's deposition testimony was somewhat ambiguous, it could be interpreted as stating that Barlow had agreed during contract negotiations that SWC would buy plaintiff an unlimited tail policy. At trial, plaintiff testified that Barlow had not made such a representation, leading the trial court to dismiss SWC's third-party claim. But, as SWC points out, it could not have known before trial whether plaintiff would testify consistently with her complaint and declaration or would, instead, retract her initial allegation that Barlow had said that SWC would buy her a lifetime policy. And although the parties discussed whether plaintiff might stipulate that Barlow had not made that kind of representation, in exchange for SWC dismissing Barlow from the litigation, no stipulation was entered. In the absence of a binding stipulation, and given that all original allegations of the complaint and supporting declarations still were in place, SWC's claim against Barlow was not "entirely devoid" of support in the record even after the summary judgment hearing.[7] Accordingly, Barlow was not entitled to an attorney fee award under ORS 20.105(1).

_____

[7] For similar reasons, SWC was not required to dismiss its third-party claim against Barlow partway through this contentious litigation simply because plaintiff's attorney asserted at the summary judgment hearing that plaintiff was not "arguing that [she was] entitled to the tail because of reliance on perhaps a negligent or mistaken statement on Mr. Barlow's part." At the same hearing, the attorney also stated both that plaintiff was "not asserting that [Barlow] said 'lifetime tail' or 'unlimited tail' " and—seemingly in contrast—that plaintiff had "not backtracked from any of her statements." Thus, the record does not compel the conclu-

In arguing to the contrary, Barlow asserts that the trial court did not abuse its discretion in awarding fees on the breach of contract claim, as the trial testimony of SWC's CEO, Harmon, "completely changed [SWC's] trial theory, the allegations within her company's complaint, and the continual argument by her counsel throughout the litigation." Consequently, he concludes, "one legal option available to the trial court was to grant [Barlow's] [m]otion for an award of attorneys' fees." That argument fails for two related reasons. First, it relies on us applying an abuse of discretion standard in reviewing the trial court's decision to award fees. As explained above, we review the trial court's decision to award fees under ORS 20.105(1) for legal error, not for abuse of discretion.

Second, the argument relies on trial court findings about the manner in which SWC litigated its third-party claim, like the findings that "SWC became overly involved in the fight" and that "SWC's continuation of the claim against Barlow, was reckless" in light of "Dr. Harmon's testimony discussing a different breach, in a different time, under different circumstances." But those findings echo the ORS 20.075 factors that guide discretionary attorney fee decisions; they are irrelevant to whether ORS 20.105(1) requires an attorney fee award because a party pursued a claim that was "entirely devoid" of support in the record. *See Benaman*, 213 Or App at 478 (party's personal motivation not relevant under ORS 20.105(1)); *Secor Investments*, 188 Or App at 174 (party's bad faith not relevant). For example, Harmon's testimony that she personally was troubled by Barlow's conduct at the exit interview, not by his statements during contract negotiations, might be relevant if the trial court were considering whether SWC had sued Barlow maliciously or in bad faith. *See* ORS 20.075(1)(a). But Harmon's testimony does not establish that the record was "entirely devoid" of support for SWC's third-party claim, which was premised on plaintiff's allegations about what Barlow said during negotiations, not which of Barlow's acts or omissions Harmon cared about herself. In short, even if the trial court reasonably could deem SWC's litigation strategy "reckless," an attorney fee award

---

sion that Barlow reaches: that SWC "knew," after the summary judgment hearing, that plaintiff "had recanted her position."

still would not be justified unless the record included *no* support for SWC's third-party claim against Barlow. As we have explained, the record includes at least some basis for that claim. Accordingly, we reverse the trial court's award of attorney fees.

SWC also challenges the trial court's award of an enhanced prevailing party fee under ORS 20.190. That statute gives the trial court discretion whether to award an enhanced fee, taking into consideration several factors, including the "objective reasonableness of the claims and defenses asserted by the parties." ORS 20.190(3)(b). Ordinarily, we would review the trial court's decision to award Barlow an enhanced prevailing party fee for abuse of discretion. However, the "objective reasonableness" factor that a trial court must consider in determining whether such a fee award is appropriate requires "the same analysis" as the single issue that matters under ORS 20.105(1)—whether a party had "no objectively reasonable basis for asserting the claim." *Lenn v. Bottem*, 221 Or App 241, 248, 190 P3d 399, *rev den*, 345 Or 503 (2008). Given our conclusion that SWC's third-party breach of contract claim against Barlow was not objectively unreasonable, we vacate the enhanced prevailing party fee award and remand so the trial court may reconsider that award in light of our conclusion and the remaining factors in ORS 20.190(3). *See, e.g.*, *Morasch*, 232 Or App at 406 (vacating and remanding enhanced prevailing party fee award in analogous circumstances).

Award of attorney fees under ORS 20.105(1) reversed; award of enhanced prevailing party fee under ORS 20.190(3) vacated and remanded; otherwise affirmed.